Below is an opinion of the court.

_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

In re

**Educational Travel Services, Inc.,**

    Debtor.

Case No. 22-31272-dwh11

MEMORANDUM DECISION ON OBJECTIONS TO CLAIMS 21, 38, 39, 78, 93, 94, AND 105[1]

## I. Introduction

Debtor, Educational Travel Services Inc., calling itself ETSI, has objected to proofs of claim by Tammie Caulder,[2] Minor D.C. Caulder,[3] Patricia Falls,[4] Jayden Joyce,[5] Jessica Joyce,[6] Patrick Mazure,[7] and Armand Milazzo.[8]

---

[1] This disposition is specific to this action. It may be cited for whatever persuasive value it may have.
[2] Claim 93-1; ECF No. 161.
[3] Claim 94-1; ECF No. 162.
[4] Claim 21-1; ECF No. 145.
[5] Claim 39-1; ECF No. 154.
[6] Claim 38-1; ECF No. 153.
[7] Claim 105-1; ECF No. 144.
[8] Claim 78-1; ECF No. 143.

Page 1 – MEMORANDUM DECISION ON OBJECTIONS TO CLAIMS etc.

Because the Joyces share a last name, I will refer to them by their first names.

For the reasons below, I will overrule the objections to the Joyces' claims but otherwise sustain the objections.

## II. Facts

### A. *All claimants*

Each of the claimants contracted with ETSI for an educational tour in 2020 that was canceled due to travel restrictions imposed during the COVID-19 pandemic. The tours were for high school students, and some parents registered to travel with their children. Jessica is Jayden's mother, and they had registered to travel together.

The contract terms for all the claimants were in a page entitled "terms and conditions," drafted by ETSI.[9] Each claimant had to agree to the contract to register for the tour. Each claimant had paid at least in part, and some had paid in full, for the tour.

The exhibits admitted in evidence included Exhibits 1 through 4 offered by ETSI[10] and Jessica's supplement to Jayden's and her proofs of claim. The supplement was filed on September 13, 2023, and appears in the register of proofs of claim for both Joyce claims, where it's labeled "doc." I call it the Joyce claim supplement.

---

[9] ECF No. 275-2.
[10] ECF Nos. 275-1 – 275-4.

Page 2 – MEMORANDUM DECISION ON OBJECTIONS TO CLAIMS etc.

Exhibit 1 summarizes the testimony of ETSI's president, Katie Dunn. For each claim at issue, that exhibit lists ETSI's position on tour-cost amounts, amounts paid to ETSI, nonrefundable portions, refunds ETSI paid, and refunds ETSI still owes. Dunn testified that the amounts listed as nonrefundable for each claimant are the sums of the amounts that ETSI advanced for hotels and airlines for which it received no refund, plus what she called "our overhead, staff, and insurance." She described the overhead being "23 percent of the gross amount, applied across the board."

At trial, Jessica and Mazure attended and testified, but the other claimants did not.

### B. The Joyces

The Joyces had registered for a tour with others from Jayden's school, Meadowdale. That tour was scheduled to depart on April 4, 2020.

ETSI and Jessica disagreed on the amount paid to ETSI for Jayden. ETSI said it had received $2,689, but Jessica testified that the payment was the same as her payment, $3,105. The attachments to both of their proofs of claims are copies of credit-card statements with highlighted payments to ETSI totaling $6,210.

Dunn testified that "the school canceled the trip" on March 10, 2020, within 30 days of scheduled departure. That's consistent with an email offered in evidence by Jessica. The next day, Dunn emailed the "Meadowdale Families" to say that the school district had "canceled all out of state travel

through April 12th" and that the tour had been postponed to June 26, 2020. The email also says that the cancellation policy "remains in effect," and "this close to original departure, the trip cost is fully non-refundable." Even so, Dunn said that ETSI would "make an exception to our policy in this case and plan to offer some sort of refund to those who need to cancel." The amount of the refund would be affected by the number of travelers and thus would not be determined "until after the trip and will not be issued until July."[11]

On April 7, 2020, Dunn emailed the families that the tour could not occur in June and had been postponed a second time by nearly a year to early April 2021.[12] That day, Jessica emailed ETSI to say that she and Jayden "look forward to this trip in April 2021."[13]

On February 18, 2021, ETSI emailed the families that the tour was postponed a third time by another year to April 2022. ETSI offered an alternative tour in early August 2021 and asked participants whether they wanted to wait until April 2022, join the August 2021 tour, or cancel. That message also reiterated that the cancellation policy remained in effect.

In a several-part email exchange from February 25 through March 25, 2021, Jessica sought to clarify the refund amount that Jayden and she would

---

[11] Joyce claim supplement at 3, email #1.
[12] Joyce claim supplement at 4, email #2.
[13] Joyce claim supplement at 6, email #3.

Page 4 – MEMORANDUM DECISION ON OBJECTIONS TO CLAIMS etc.

receive if they were to cancel. In the March 25 email, ETSI asked Jessica for a decision by April 2, 2021.[14]

On April 6, 2021, the Washington State Attorney General's office emailed Jessica to acknowledge that it had received from her a complaint about ETSI. That email restated the text of the complaint, which concluded with, "My son and I do not desire to go on this trip anymore and I would like a full refund."[15]

Nearly three weeks later, ETSI followed up with Jessica again because it had not received her choice of options or "received notice of your intent to cancel." ETSI said it had received the complaint, and "will consider your filed complaint as your cancellation notice from the trip unless we hear otherwise from you directly before May 1, 2021." ETSI also said that, if the Joyces were to decide to participate in either of the tour options, they would need to notify the Attorney General "that you will be withdrawing your complaint and satisfactorily moving forward with travel plans with our company."[16]

The next day, Dunn emailed the Attorney General, saying that ETSI "has not heard from this traveler [the Joyces] with a cancellation that is only excepted [*sic*, accepted] written [*sic*, in writing]. We have this traveler listed on the tour that is still happening August 2021."[17] After Jessica received that

---

[14] Joyce claim supplement at 11–15, email ##5–9.
[15] Joyce claim supplement at 25, email #19.
[16] Joyce claim supplement at 17, email #11.
[17] Joyce claim supplement at 18, email #12.

Page 5 – MEMORANDUM DECISION ON OBJECTIONS TO CLAIMS etc.

email, she responded to ETSI, saying that she "did not intend on traveling in August 2021."[18]

On August 27, 2021, Jessica emailed ETSI, referring to a letter she received from ETSI saying that "my cancellation and refund for the Meadowdale trip is being processed." She complained that a request to cancel must be submitted in writing and denied that she had submitted a written cancellation. She also said that she and Jayden "intend on travelling with the group in April 2022." She asked that ETSI "remove my refund from the 'queue.'"[19]

Three days later, Dunn emailed Jessica to reiterate that ETSI considered the complaint to be a cancellation. Dunn also said, "[i]f you'd like to remain traveling [with] us, we kindly ask for your complaint to be removed from public record."[20] The same day, Jessica replied to Dunn, saying that (1) "Per the AG office," Jessica is "not able to withdraw my complaint"; (2) she disagreed that the complaint was notification of cancellation; and (3) "my trip should be reinstated and my cancellation removed from the queue."[21] A week later, Jessica emailed Dunn to reiterate her earlier positions, adding "[i]f you are canceling me, I will expect a full refund."[22]

---

[18] Joyce claim supplement at 23, email #17.
[19] Joyce claim supplement at 19, email #13.
[20] Joyce claim supplement at 21, email #15.
[21] Joyce claim supplement at 22, email #16.
[22] Joyce claim supplement at 23, email #17.

Page 6 – MEMORANDUM DECISION ON OBJECTIONS TO CLAIMS etc.

A week after that, Dunn emailed Jessica that "[w]e are considering the demand for a full refund to the AG office a formal cancellation."[23] There were no further communications between ETSI and Jessica, and the Joyces did not travel in April 2022.

### C. *Mazure*

The destination for the tour planned for Mazure's school was Costa Rica. None of the vendors ETSI had prepaid for that tour gave ETSI any refunds.

ETSI offered to arrange for a replacement tour in 2021, but that tour did not occur. Dunn testified that the school declined or canceled the 2021 tour. Mazure testified that he thought that the 2021 tour had been canceled by ETSI. Dunn was more certain in her testimony, and I credit it over Mazure's.

## III. Analysis

### A. *Burden of proof*

A proof of claim is prima facie evidence of the claim's validity and amount.[24] To defeat the claim, the objector must come forward with sufficient evidence and show facts tending to defeat the claim by probative force equal to that of the allegation of the proofs of claim themselves. If the objector produces sufficient evidence to negate on or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.[25]

---

[23] Joyce claim supplement at 25, email #19.
[24] Fed. R. Bankr. P. 3001(f).
[25] Lundell v. Anchor Const. Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000) (cleaned up).

### B. *Choice of law*

When a federal court determines which state's law applies to an issue governed by state law, the court applies the choice-of-law rules of the forum state.[26] Because this court sits in Oregon, it applies Oregon's choice-of-law rules.[27] A party relying on the law of a state other than the forum must call it to the attention of the court at the proper time.[28]

Here, no party has argued that, under Oregon's choice-of-law rules, the law of a state other than Oregon (such as Washington State, where the Joyces and Mazure live, according to their proofs of claim) govern these claim objections. Any argument for application of law other than that of Oregon is forfeit.

### C. *Discharge of ETSI's obligation to provide tours*

The first sentence of paragraph 6 of the contract gave ETSI the right to cancel any tour that is rendered impossible or inadvisable due to "acts of God, governmental interference or any cause whatsoever that is beyond ETSI's control." I accept Dunn's unrefuted testimony that the pandemic made the claimants' tours, which were scheduled to depart early in the pandemic, impossible or inadvisable. That occurrence gave ETSI the right to cancel, discharging its obligation to provide the tours. Even if the contract had

---

[26] Kolrautz v. Oilmen Participation Corp., 441 F.3d 827, 833 (9th Cir. 2006).
[27] Or. Rev. Stat. §§ 15.300–.380.
[28] O'Neill v. United States, 411 F.2d 139, 144 n.10 (3d Cir. 1969); Kucel v. Walter E. Heller & Co., 813 F.2d 67, 74 (5th Cir. 1987); Prudential Ins. Co. of Am. v. Carlson, 126 F.2d 607, 611 (10th Cir. 1942).

Page 8 – MEMORANDUM DECISION ON OBJECTIONS TO CLAIMS etc.

lacked that sentence, the Restatement (Second) of Contracts § 261 (1981) recognizes that the common law gave ETSI a similar right.

A later contract paragraph follows the heading "Cancellation Policy." It prescribes the contents of a cancellation request and requires that it be submitted to ETSI by email to a specific email address or by letter to a specific mailing address. It also includes a schedule of refund amounts, depending on when the cancellation request is submitted. If a request was submitted 30 or fewer days before departure, none of the tour cost was refundable.

### D. *Refunds due from ETSI*

Although ETSI argued, relying both on paragraph 6 and the cancellation policy, that it could have declined to make any refund, it nonetheless proposed in its objections and at trial to make refunds that, with two exceptions, are in nonzero amounts. ETSI says those are the amounts it received less the amounts it expended to vendors but could not recover, plus overhead. Jessica testified that she has not received a satisfactory explanation of ETSI's accounting of nonrefundable expenses. But neither she nor Mazure offered any evidence that the nonrefundable amounts, plus overhead, were other than claimed by ETSI. I accept ETSI's evidence of those amounts.

ETSI's undertaking to refund amounts to the claimants tracks with its legal obligation. Having been discharged by the pandemic of its obligation to

provide the tours, it could not retain the benefits of the contracts—the amounts the claimants had paid—without making just compensation. There are several sources of that obligation. Under the Restatement (Second) of Contracts § 272(1), either party to a contract of which performance is discharged as impracticable "may have a claim for relief including restitution . . .." Under the Restatement (Third) of Restitution and Unjust Enrichment § 34(1) (2011), one who renders performance under a contract subject to avoidance by change in circumstances "has a claim in restitution to recover the performance or its value, as necessary to prevent unjust enrichment." And a contracts treatise says that "[w]hen a party has been discharged under the impossibility doctrine, courts will not permit that party to retain the benefits of a performance rendered by the other party without making just compensation."[29] Although I have found no Oregon appellate decisions addressing the Restatement (Second) of Contracts sections or the treatise, the Restatement (Third) of Restitution and Unjust Enrichment section has been cited with approval by the Oregon Supreme Court.[30]

No claimant has disputed that ETSI's approach to determining refunds—starting with the amount paid and subtracting the nonrefundable amounts ETSI paid vendors, plus overhead—results in just compensation to claimants,

---

[29] 14 Corbin on Contracts § 78.7 (last viewed online through Lexis+ on September 23, 2023).
[30] Neel v. Lee, 504 P.3d 26, 40 (Or. App. 2021).

Page 10 – MEMORANDUM DECISION ON OBJECTIONS TO CLAIMS etc.

either in principle or as ETSI proposes to apply that approach to a specific claimant.

Nothing in the contract conflicts with ETSI's obligation to pay just compensation. The first sentence of paragraph 6 allows ETSI to cancel for force majeure "without cost or liability." But it would be anomalous for the contract, which entitles a participant who cancels more than 30 days before departure to a full or partial refund, to permit ETSI to deny any refund after a force-majeure cancellation—even if ETSI receives a full refund from vendors it has paid. The second sentence of paragraph 6 says that "expenses incurred as a result [of a cancellation] will be the responsibility of the participant." I read that sentence to refer to expenses incurred by a participant because of a force-majeure cancellation, rather than to just compensation ETSI must pay to participants.

I understand ETSI not to rely on the cancelation policy to justify its treatment of any of the claimants, even though Exhibit 1 includes for the Joyces and Mazure the comment "<30 days out." In any case, that policy applies by its terms to cancellation by the participant, not by ETSI or nonparties.

ETSI offered evidence that cancellation of the tours scheduled for early in the pandemic was caused by travel restrictions imposed by governments or carriers, rather than any act of cancellation by a participant or ETSI itself. There was also evidence of cancellations being initiated by schools. But the

Page 11 – MEMORANDUM DECISION ON OBJECTIONS TO CLAIMS etc.

only contract admitted in evidence was between ETSI and the participants; the school was not a party. If ETSI accepted a cancellation decision from a school, rather from a participant, that cancellation was not one governed by the cancellation provision of the contract, and thus ETSI was not entitled to rely on that cancellation within 30 days of the departure date to refuse any payment refund.

### E. *Claimants other than the Joyces*

For the claimants other than the Joyces, including Mazure, I accept ETSI's evidence and argument that the pandemic excused its performance of the tours, and the amounts for which it proposes the claims be allowed give the claimants appropriate credit for amounts ETSI received as refunds from its vendors, less overhead.

For Mazure specifically, I accept ETSI's uncontradicted evidence that all payments for the tour for which his daughter registered were nonrefundable to ETSI, and the amount Mazure paid, less the nonrefundable amounts ETSI paid and overhead left nothing to be refunded.

ETSI's calculation of refunds due to the participants other than the Joyces, including Mazure, prevent unjust enrichment of ETSI.

### F. *The Joyces*

I agree with the Joyces that they did not cancel by submitting the Attorney General complaint, even though Jessica stated in the complaint that Jayden and she did not wish to travel with ETSI. ETSI wrote the cancellation

policy for its own benefit to narrow the circumstances in which it would be obligated to honor a cancellation request, requiring that any request either be emailed to a specific email address or mailed to a specific mailing address. ETSI was not required to honor any other form of cancellation request. The complaint was made to the Attorney General; there is no evidence that Jessica sent it to ETSI, much less to the specific email or mailing addresses prescribed by the policy. Had the Joyces tried to demand a full or partial refund based on that complaint, ETSI could have declined because the request was not submitted in the form required by the policy. If the complaint could not have entitled the Joyces to a refund, ETSI cannot invoke it to refuse to allow them to participate in a tour for which they had paid.

Even if the Joyces' complaint could, in theory, have constituted a compliant cancellation request, ETSI did not unambiguously treat it as such. ETSI's late April 2021 email to Jessica referred to the complaint, but it also said that ETSI had not received "notice of [the Joyces'] intent to cancel," and ETSI gave the Joyces more time to say whether they intended to cancel. ETSI's email the same day to the Attorney General said that ETSI had not heard from the Joyces "with a cancellation request," which it said could be accepted only in writing, and ETSI had the Joyces listed to go on the August 2021 tour.

ETSI's offer to the Joyces and other Meadowdale families to travel in August 2021 or in April 2022 demonstrated that the pandemic was no longer

a factor in determining whether and for what cost the Meadowdale participants could travel for no cost on top of the amounts they had paid before the pandemic. For that reason, paragraph 6 of the contract no longer excused ETSI's obligation to allow them to travel in April 2022. And Jessica made it clear no later than late August 2021 that Jayden and she had not canceled and specifically wanted to join the 2022 tour.

I find that ETSI treated the Joyces as having canceled only because they had made and not withdrawn their Attorney General complaint. ETSI pointed to no justification for conditioning their right to travel on withdrawal of the complaint. In any case, ETSI offered no evidence to contradict Jessica's testimony that withdrawal of the complaint was impossible—presumably because it was not permitted.

I accept Jessica's testimony that the amount paid on behalf of Jayden was $3,105, the same amount that Jessica paid, and not $2,689, the amount in ETSI's Exhibit 1. The greater amount for Jayden's claim tracks with the payments shown on the credit card statements attached to the Joyces' proofs of claim, which total $6,210—twice $3,105.

### IV. Conclusion

I will overrule the objections to the Joyces' claims and sustain the objections to the other claims.

ETSI should lodge orders on the claim objections.

###

cc: Tammie Caulder
　　Minor D.C. Caulder
　　Patricia Falls
　　Jayden Joyce
　　Jessica Joyce
　　Patrick Mazure
　　Armand Milazzo